IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| GLORIA BARBER, | ) Civil Action No. 3:05-3405-MBS-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| COLUMBIA COLLEGE, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |
| | ) |

Plaintiff, Gloria Barber ("Barber") filed this action on December 6, 2005. She alleges claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").[1] Additionally, Barber asserts claims under South Carolina law. Defendant Columbia College ("Columbia College" or the "College") filed a motion for summary judgment on October 6, 2006. Barber filed a memorandum in opposition on October 26, 2006, and Columbia College filed a reply on November 6, 2006.

SUMMARY JUDGMENT STANDARD

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension

---

[1]Pretrial matters in this case were referred to the undersigned pursuant to Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

Serv., 815 F.2d 1001, 1005 (4th Cir.), cert. denied, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits (see Fed. R. Civ. P. 56(e)), depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., supra. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316

2

(4th Cir. 1993) and <u>DeLeon v. St. Joseph Hospital, Inc.</u>, 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547 (5th Cir. 1987) and <u>Evans v. Technologies Applications & Servs. Co.</u>, 80 F.3d 954 (4th Cir. 1996).

<u>FACTS</u>

1.    Columbia College was founded in 1854 and is a private, liberal arts women's college and now has a coeducational evening college and graduate school. Virginia Ricker ("Ricker")[2] Aff., Para. 2.

2.    Barber, an African-American female, was hired by Columbia College in 1986 in the environmental services department, where she performed housekeeping duties. Ricker Aff., Para. 10.

3.    In or around 1992, Barber was promoted to the position of Housekeeping Team Leader where she remained until 1997, when she voluntarily moved back to her former housekeeping position because she felt overwhelmed by her supervisory job. Barber Dep. I[3] 47-48; Ricker Aff., Para. 11.

4.    In 1997, Columbia College hired Gaby Hickman ("Hickman"), a Caucasian female, to supervise its housekeeping department, then known as the Support Services Department. She became Barber's supervisor. <u>See</u> Ricker Aff., Para. 13; Hickman Aff., Para. 9.

---

[2]Ricker is the Director of Administration for Columbia College. Since November 2004, her duties have included all aspects of human resources management. Ricker Aff., Para. 5.

[3]Barber's deposition was taken over the course of two days. The transcript from August 24, 2006 is referred to as "Barber Dep. I" and from September 12, 2006 as "Barber Dep. II."

5.    In 1999, Barber fell behind the Music and Arts building and injured her right hand, which required surgery.  She was out of work for approximately six months due to the injury.  Barber Dep. I 58-59.

6.    On June 30, 1999, Columbia College terminated the employment of every employee in the Support Services Department (including Barber and Hickman) and outsourced all housekeeping duties to an entity known as Sodexho or Sodexho-Marriott .  As a result of the outsourcing, Columbia College's employment relationship with Barber ended in June 1999, when she accepted employment with Sodexho and continued working with that entity on Columbia College's campus.  Hickman also accepted employment with Sodexho and supervised Barber as an employee of Sodexho.  Ricker Aff., Paras. 14-16; Hickman Aff., Paras. 10-11; Barber Dep.  I 21-22, 41.

7.    Columbia College terminated its outsourcing arrangement with Sodexho and again began employing its own housekeeping staff on July 1, 2003.  Former Sodexho employees, including Barber, were required to complete job applications and attend new employee orientation prior to being hired by Columbia College.  Barber was hired by Columbia College in July 2003.  Barber, and other employees who previously worked for Columbia College and Sodexho, were given credit for their previous time with Columbia College and their time with Sodexho which impacted their various benefits.  Ricker Aff., Paras. 17-19.

8.    Hickman, in the position of Assistant Director of Facilities Management, reported directly to Tom Battenhouse ("Battenhouse"), Columbia College's Director of Facilities Management.  See Hickman Aff., Paras. 2, 6.

9.      Around the time Barber changed back to employment with Columbia College, she hurt her left arm in Mirse Hall.  Barber Dep. II 24-25.

10.      On July 14, 2003, Barber's treating physician restricted her from pushing and pulling more than five pounds and lifting and carrying more than two pounds.  Defendant's Ex. GR1.[4]

11.     Barber's treating physician revised her restrictions, limiting her to pushing and pulling no more than eight pounds and lifting and carrying no more than one pound on September 30, 2003.  Defendant's Ex. GR2.

12.     Barber's treating physician revised her restrictions to preclude her from pushing and pulling more than fifteen pounds and lifting and carrying more than five pounds in December 2003.  Defendant's Ex. GR3.

13.     Barber's treating physician released her to return to her regular duties on January 2, 2004.  Defendant's Ex. GR3.

14.     On March 16, 2004, Barber's treating physician restricted her from pushing and pulling more than fifteen pounds and lifting and carrying more than four pounds.  Defendant's Ex. GR5.[5]

15.     On March 19, 2004, Barber's employment with the College was terminated.  See Defendant's Ex. GR4.

16.     Barber wrote letters to Caroline Whitson, President of Columbia College, on March 25 and April 1, 2004.  In her April 1, 2004 letter, Barber stated that she punched in for work at 6:55 a.m. on Friday March 19, 2004, but was in a great deal of pain.  She called Hickman and told

---

[4]Exhibits attached to Defendant's motion for summary judgment and Plaintiff's opposition memorandum are referred to, respectively, as "Defendant's Ex. __" and Plaintiff's Ex. __."

[5]Barber claims she gave these restrictions to Hickman prior to the March 19, 2004 incident discussed below.  Columbia College asserts that it was not aware of these new restrictions until after that incident.  See Whitson's April 1, 2004 letter (Plaintiff's Ex. 2).

her she was going to leave, punched out, and informed Hickman that she would not be returning that day.  On March 22, 2004, Barber was informed by Battenhouse that she was being terminated.  Plaintiff's Ex. 3; <u>see</u> <u>also</u> Barber Dep. I 157-160.  Pursuant to Dr. Whitson's instructions, Barber was reinstated to her former position contingent on certain conditions.  Her absence from March 19 to April 15, 2004 was treated as a suspension.  Defendant's Ex. GR4; Barber Dep. 157-160.

17.    Barber's treating physician revised her restrictions to permanent light duties with no lifting and pulling over fifteen pounds, no lifting or carrying over eight pounds, and no repetitive lifting on May 18, 2004.  Defendant's Ex. GR6.

18.    On August 20, 2004, Barer's physician restricted her from lifting more than five pounds and prohibited her from using her back or bending.  Defendant's Ex. GR7.  Based on these restrictions and the permanent restrictions Barber's physician imposed in May 2004, Columbia College concluded that it had no other available accommodations that would have enabled Barber to perform the essential functions of her job and placed her on a leave of absence for twelve weeks, pursuant to the Family and Medical Leave Act ("FMLA").  Ricker Aff., Paras. 45-46; Hickman Aff., Para. 34; Defendant's Ex. GR8.

19.    After Barber exhausted her twelve weeks of FMLA leave, Columbia College extended her leave of absence for an additional three months, through February 23, 2005, pursuant to Columbia College's medical leave of absence policy.  Ricker Aff., Para. 47, <u>see</u> Defendant's Ex. GR12 (Columbia College Staff Handbook).

20.    On January 31, 2005, Barber filed a Charge of Discrimination with the South Carolina Human Affairs Commission ('SCHAC") and the Equal Employment Opportunity

Commission ("EEOC"), alleging that she was discriminated against based on her race and disability. She also alleged retaliation.

21. Columbia College extended Barber's leave of absence, through March 9, 2005, to allow Barber's physician the necessary time to complete a fitness-for-duty certificate. Ricker Aff., Para. 48.

22. On February 24, 2005, Barber's treating physician completed a fitness-for-duty certification and declared that she was unable to perform her essential job functions "due to chronic arm and hand pains." The physician further stated that these conditions were permanent or "for life" and it would pose a direct threat to her health or safety if she returned to the workplace. Defendant's Ex. GR9.

23. Columbia College extended Barber's leave of absence through May 23, 2005, to give her additional time to qualify for long-term disability benefits. Ricker Aff., Para. 50.

24. Columbia College terminated Barber's employment on May 23, 2005. See Defendant's Ex. GR11.

## MOTION FOR SUMMARY JUDGMENT

Barber alleges that Columbia College: (1) discriminated against her in violation of the ADA by failing to accommodate her disability; (2) discriminated against her based on her race; (3) subjected her to a racially hostile work environment; and (4) retaliated against her for complaining about discriminatory practices. She also alleges claims for gross negligence/reckless conduct and negligent supervision in violation of South Carolina law. In her memorandum in opposition to summary judgment, Barber concedes these state law claims are barred as the exclusive remedy

would be under the South Carolina Worker's Compensation Act.  See Plaintiff's Opp. Mem. at 4-5.[6]

Columbia College contends that it is entitled to summary judgment because: (1) Columbia College

did not violate the ADA; (2) it did not discriminate against Barber based on her race or disability;

(3) it did not harass Barber based on her race; and (4) it did not retaliate against Barber.

A.    300 day period

Columbia College contends that Barber's Title VII and ADA claims that occurred

prior to April 6, 2004 are barred because they occurred over 300 days prior to the filing of her

Charge of Discrimination with SCHAC.[7]  In her opposition memorandum, Barber admits that "her

---

[6]In its motion for summary judgment, Columbia College also contends that to the extent Barber has pled a cause of action under S.C. Code Ann. § 41-1-80 (she cites the statute in the beginning of her Complaint, but does not specifically lay out a cause of action under this statute), the Court should dismiss the claim with prejudice.  Section 41-1-80 prohibits employers from discharging or demoting an employee "because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law...or has testified or is about to testify in any such proceeding."  Columbia College, citing Morgan v. The Mattress Gallery, LLC, 2006 WL 1878983, at *2-3 (D.S.C., July 6, 2006)(unpublished), contends that § 41-1-80 provides no relief as Barber's treating physician did not release her to return to work. Barber has not addressed this argument in her opposition memorandum and thus appears to concede that she has not established a claim under § 41-1-80.

[7]To pursue a claim, Barber must have filed her complaint with the EEOC within 180 days of the incident, or within 300 days of the incident if state or local proceedings are initiated (as is the case here).  42 U.S.C. § 2000e-5(e)(1); see 42 U.S.C. § 2000e-5(e)(1)(establishing a 300-day limitations period within which a claimant has to file a charge of discrimination under the ADA); 42 U.S.C. § 12117.  Before a federal court may assume jurisdiction over a claim under Title VII, "a claimant must exhaust the administrative procedures enumerated in 42 U.S.C. § 2000e-5(b), which include an investigation of the complaint and a determination by the EEOC as to whether 'reasonable' cause exists to believe that the charge of discrimination is true."  Davis v. North Carolina Dep't of Correction, 48 F.3d 134, 137 (4th Cir. 1995).  Generally speaking, this court does not have subject matter jurisdiction under Title VII of claims omitted from the EEOC administrative charge.  Dennis v. County of Fairfax, 55 F.3d 151, 156-57 (4th Cir. 1995).  This exhaustion requirement applies not only to substantive claims of discrimination under Title VII, but also to claims of retaliation.  See Sloop v. Memorial Mission Hospital, Inc., 198 F.3d 147 (4th Cir. 1999)(holding claim of retaliation procedurally barred because not raised in charge of discrimination).

8

Title VII claims and her disability claims run during the 300-day period covered under her charge of discrimination." Plaintiff's Opp. Mem. at 15. As noted above, Barber filed her claim with SCHAC on January 31, 2005. Thus, only Barber's claims under Title VII and the ADA which occurred on or after April 6, 2004, will be considered in this report and recommendation.

B.    ADA

Barber alleges that Columbia College violated her rights under the ADA because it failed to properly accommodate her injuries. It is unclear, but she may also be attempting to assert a claim for wrongful termination under the ADA. Columbia College contends that it is entitled to summary judgment as to Barber's ADA claims because she was not a qualified disabled individual and even if she were qualified, it thoroughly and continuously accommodated her during the last two years of her employment with the College.

Congress passed the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). The Act provides in part:

> No covered entity[8] shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). According to the Act the term "discriminate" includes:

> denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant.

42 U.S.C. § 12112(b)(5)(B). The Act further defines "reasonable accommodation" to include:

---

[8]Defendant has not argued that it is not a covered entity.

9

job restructuring, part-time or modified work schedules, reassignment to a vacant position. . . and similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).

    (1)    <u>Wrongful Termination</u>

To establish a prima facie case of wrongful discharge on the basis of the ADA, a plaintiff must show by a preponderance of the evidence that (1) she is within the ADA's protected class; (2) she was discharged; (3) at the time of her discharge, she was performing the job at a level that met the employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. <u>Haulbrook v. Michelin N. Am., Inc.</u>, 252 F.3d 696, 702 (4th Cir.2001).

To the extent that Barber is asserting a wrongful discharge claim under the ADA, she fails to establish her claim because she cannot show that she was performing her job at a level that met Columbia College's legitimate expectations at the time she was discharged. Barber's physician, in his February 24, 2005 fitness-for-duty certification, stated that Barber was unable to perform her job duties and he could not recommend any possible accommodations that would allow her to return to work. Defendant's Ex. GR9. Barber does not deny that she could not return to work at the time of her termination. Plaintiff's Opp. Mem. at 7.

    (2)    <u>Failure to Accommodate</u>

A plaintiff must establish four elements by a preponderance of the evidence in order to make out a prima facie case for failure to accommodate a disability under the ADA:

(1) he was an individual who had a disability within the meaning of the statute; (2) his employer had notice of his disability; (3) with reasonable accommodation he could perform the essential functions of his position; and (4) his employer refused to make such accommodations.  See Rhoads v. F.D.I.C., 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

Columbia College contends that Barber cannot establish a failure to accommodate claim because she cannot show that she meets the third and fourth prongs of her prima facie case.  The College contends that Barber was unable to perform the essential functions of her job as evidenced by her deposition testimony, her receipt of long-term disability benefits, her application for Social Security disability benefits (Barber Dep. I 32), her treating physician's refusal to release her to return to work, and her treating physician's prognosis that she would never would work again and would pose a direct threat to herself is she attempted to return to work.  Barber appears to concede that she could not perform her job at the time of her termination, but contends that she could have performed her job prior to that time with reasonable accommodations.[9]

Columbia College contends that Barber could not perform the essential functions of her job with reasonable accommodations after August 2004 (when it placed her on FMLA leave).  Barber disputes this, but has failed to provide any evidence that she could perform the essential functions of her job after August 2004 with reasonable accommodations.  On August 20, 2004, Barber's physician restricted her from lifting more than five pounds and prohibited her from using her back or bending.  Defendant's Ex. GR7.  Barber has not shown that she could perform the essential

---

[9]Barber also contends that even though she is currently unable to work, it was "Defendant's failure to accommodate her that lead to her current disabled state."  Plaintiff's Opp. Mem. at 7.  Barber, however, has produced no medical documentation and/or expert testimony to support this theory.

functions of her job[10] with reasonable accommodation in light of those restrictions. Further, there is no indication that her treating physician released her to work during the period from August 2004 through her termination on May 23, 2005. See Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998)(affirming summary judgment for employer on ADA claim and noting that because the employee "was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job")(citations omitted); Crow v. McElroy Coal Co., 290 F.Supp.2d 693, 696-697 (N.D.W.Va. 2003)(holding that because the plaintiff "failed to obtain a release to work from his doctor, [he] has not shown that he can perform the essential functions of the job with or without reasonable accommodation..."), aff'd, 77 Fed. Appx. 649 (4th Cir., Oct. 7, 2003).

Barber claims that Columbia College could have accommodated her by hiring her as a postal clerk. She learned of an opening for a postal clerk in January 2004. Barber claims that Battenhouse told her she could have the job if her treating physician certified she was fit for the job. Barber Dep. 75-76. Ricker, however, states that in February 2004, the College hired the most qualified candidate, an African-American male who had previous full-time experience working in a college post office, to fill the vacancy. She contrasts this with Barber who had no full-time experience working in a post office. Ricker Aff., Para. 29. Hickman states that the postal clerk job required

_____

[10]Columbia College provides that the essential job functions of Barber's job included cleaning, waxing, mopping, dusting, sweeping, emptying waste baskets and trash cans, vacuuming, scrubbing, washing, moving and setting up tables and chairs, polishing, disposing of trash, and other housekeeping or custodial tasks that the College assigned to her. The essential job functions of Plaintiff's job required her to continuously walk and stand and to occasionally sit, balance, stoop, kneel, crouch, crawl, reach, climb steps, push, pull, lift, and carry. Columbia College estimated that sweeping required fifteen pounds of exertion, mopping required fifteen pounds of exertion, and lifting trash cans required up to twenty pounds of exertion. Ricker Aff., Para. 20; Hickman Aff., Para. 12; Battenhouse Aff., Para. 8.

the clerk to lift, move, and carry packages that sometimes weighed more than twenty-five pounds. She also states that Barber had no full-time experience working in the post office and the College preferred to hire a candidate with prior postal experience. Hickman Aff., Para. 21. Barber testified that her experience in the post office occurred prior to Hickman working at the College (i.e. before 1997) and consisted merely of her filling in by putting mail in boxes occasionally for two hours at a time. Barber Dep. 76-77.

Columbia College contends that it provided reasonable accommodations to Barber. Specifically, the College contends it granted the following accommodations to Barber:

(1) Assigned Barber to work with a co-worker after restrictions were imposed by Barber's physician in July 14 and September 30, 2003, so that she would receive assistance in performing her essential job functions in various campus buildings, including Knox Hall and the Bush Science Center. Advised her to inform Hickman if she needed additional help or could not complete an assignment because of her medical conditions. Ricker Aff., Paras. 25-26; Hickman Aff., Paras. 16-17.

(2) Obtained a temporary worker from Roper Personnel to assist Barber in performing her essential functions after her treating physician revised her medical restrictions in December 2003. Ricker Aff., Para. 27; Hickman Aff., Para. 18.

(3) Continued to assign a temporary worker and, if the temporary worker was not available, provided the custodian from Bush Science Center to help Barber during the first quarter of 2004, even though Barber's treating physician had released her to regular duty work. Assigned a custodian from Kneece Hall to help Barber perform her job duties in Knox Hall during the first quarter of 2004. Ricker Aff., Para. 30; Hickman Aff., Para. 22.

(4) Assigned Barber to work in the Allison Administration Building after she was reinstated in April 2004. Deirdre Clinton ("Clinton"), an African-American co-worker, was also assigned to help Barber with her work in the Allison Building. Clinton testified that the Allison building generally was easier to clean than most other buildings on campus, including classrooms. Ricker Aff., Para. 35; Hickman Aff., Para. 28; Clinton Dep. 27.

13

    (5)      Reassigned Barber to dust bookshelves in the library for a three-day assignment approximately two weeks after Barber began work in the Allison Building. Wanda Brazzle ("Brazzle"), an African-American female who was Barber's co-worker, described the library as the lightest duty building on campus. After Barber complained that she could not perform the only essential job function of dusting, Columbia College assigned a co-worker to help Barber dust the shelves and gave her approximately twice the time originally assigned to complete the library assignment. Hickman and Ricker reported that Barber was reassigned to the library because she reported that she could only perform 15 to 30 percent of her assigned job duties in the Allison Building.[11] Brazzle Dep. 77-78; Ricker Aff., Para. 36; Hickman Aff., Para. 29-31.

    (6)      Assigned Barber to clean rooms in Mirse Hall on or about May 7, 2004, and assigned a co-worker to help her perform the essential functions of that position. Ricker Aff., Para. 39.

    (7)      Placed Barber on twelve weeks leave under the Family Medical Leave Act ("FMLA") on August 20, 2004, after concluding there were no available accommodations that would allow Barber to perform the essential functions of her job after her treating physician permanently restricted her from lifting more than five pounds and prohibited her from using her back or bending. Ricker Aff., Para. 46.

    (8)      Extended Barber's leave of absence for an additional three months, through February 23, 2005, pursuant to the College's medical leave of absence policy, after Barber exhausted her twelve weeks of FMLA leave. Ricker Aff., Para. 47.

    (9)      Extended Barber's leave of absence through March 9, 2005, to give her treating physician the necessary time to complete a fitness-for-duty certificate. Ricker Aff., Para. 48.

    (10)    Extended Barber's leave of absence through May 23, 2005, to give Barber additional time to qualify for long-term disability benefits. Ricker Aff., Para. 50.

Barber contends that these accommodations were not reasonable. Specifically, she cites testimony from Clinton to claim that she did not receive any help in Knox Hall. Review of the transcript, however, reveals that Clinton merely testified that Barber did not receive help until

---

[11]Barber claims she never gave a specific percentage of duties she could perform.

Barber told Hickman that her hands were hurting and she needed help. Although Clinton wrote a statement (dated May 31, 2005) that she did not think anyone was helping Barber in Knox Hall (Plaintiff's Ex. 5), Clinton testified it occurred only in the beginning and that she failed to clarify that in her note. Clinton Dep. 44-46. Barber also contends it was more work for an employee to work with a temporary worker because one had to train the worker and still be responsible for one's own work. She also claims that working in the Bush Science building involved more work and Hickman would use the excuse of Barber having an assistant to assign her more work. Additionally, Barber contends that assigning a co-worker was not an accommodation because the co-worker would only help after finishing his or her own work.

Columbia College provided Barber with reasonable accommodations, including temporary workers, help from other employees, and different job assignments. Barber admits that the College gave her four to six weeks off and then assigned her to perform light duty work in Fall 2003; assigned a temporary worker to assist her with her job duties "a lot of times," and assigned Clinton to help her perform her job duties in the Allison Building (Barber Dep. 81, 83-84, 142, 144, 146-147, Barber Dep. II 58). She also admitted that Columbia College reduced her job duties by requiring her only to clean sinks and commodes and delegating other bathroom cleaning duties, such as mopping and sweeping, to other employees. Barber Dep. 115-117; Dep. II 15-16. Brazzle testified that the College required her to help Barber perform her job duties (including vacuuming and waxing floors for Barber and helping her "with some of her toilet stuff") and required Barber only to clean restrooms. Brazzle Dep. 34-35, 54-55, 57-59. Barber admitted that Columbia College assigned a temporary worker to help her perform her job duties in the science building. Barber Dep. II 33-34. Clinton stated that the College did not require Barber to lift furniture after she injured her

15

hands and that she and "another lady" helped Barber perform her job duties. Clinton Dep. 13, 23-25, 50-52. Although Barber claims that these accommodations were not sufficient, the ADA does not require an employer to provide the specific accommodation requested by the disabled employee, or even to provide the best accommodation, so long as the accommodation provided to the disabled employee is reasonable. See Rehling v. City of Chicago, 207 F.3d 1009, 1014 (7th Cir. 2000); Walter v. United Airlines, Inc., 232 F.3d 892 (4th Cir. 2000)(unpublished). Further, the majority of the problems with accommodations of which Barber complains occurred prior to April 2004. See Plaintiff's Opp. Mem. 9-11. As noted above, Barber concedes that claims prior to this time are barred because they occurred over 300 days prior to the filing of her Charge with SCHAC.

### C.    Title VII - Disparate Treatment

In her Complaint, Barber alleges that she was subjected to disparate treatment based on her race because African-American females were required to lift heavy night stands and tables without help, but Caucasian females were assigned help without even having to request it. She also alleges that Battenhouse and Hickman moved her from building to building to cause trouble between Barber and other employees and that Battenhouse and Hickman would not assign her assignments in accordance with her limitations because of her race. In her opposition memorandum, Plaintiff alleges that she was subjected to disparate treatment based on her race because two Hispanic workers who were injured where given accommodations, but she was not. Columbia College contends that Barber fails to establish a prima facie case of discrimination based on race.

Title VII makes it "an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff may proceed under ordinary principles of proof using direct or indirect evidence, or, in the absence of direct proof of a defendant's intent to discriminate, a plaintiff can employ the scheme outlined in McDonnell Douglas v. Green, 411 U.S. 792 (1973) to establish a prima facie case of discrimination by offering proof that:

> (1)    he is a member of a protected class;
>
> (2)    he was qualified for his job and his job performance was satisfactory;
>
> (3)    he was subjected to an adverse employment action; and
>
> (4)    the alleged adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination.

See Gairola v. Commonwealth of Virginia Dep't of General Serv., 753 F.2d 1281, 1286 (4th Cir.1985); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir.), cert. denied, 516 U.S. 870 (1995); McDonnell Douglas, 411 U.S. at 802.  McDonnell Douglas provides that, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory basis for the challenged employment action.  McDonnell Douglas, 411 U.S. at 802.  If the employer provides the required evidence of a non-discriminatory reason for the action, the plaintiff must then show that the proffered reasons were not the true reasons for the employment action, but were a pretext for discrimination.  Id. at 804; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Although Plaintiff alleges in her Complaint that Caucasian employees were treated better than she was treated, she has not identified any comparator and admitted in her deposition that she only had one Caucasian co-worker during her employment with the College and that this white employee "didn't last that long."  Barber Dep. I 43.

In her deposition, Barber claimed that Delia Torra Rodriguez ("Delia"), a Hispanic female, received better treatment. Specifically, Barber claims that Delia was injured and other housekeepers would help Delia with her work vacuuming, mopping, dusting, and taking out trash. Barber Dep. I 67, Dep. II 23. Barber's claims concerning Delia are barred because they occurred prior to April 6, 2004. Additionally, claims concerning Delia involve incidents which occurred while Barber was an employee of Sodexho, not Columbia College.

In her opposition memorandum, Barber claims that Maria Rodriguez ("Maria"), a Hispanic female, was treated better than Barber was treated. Barber cites to Clinton's deposition (Clinton Dep. 36-39) in claiming that Maria was given the opportunity to work in the President's house during the time she was injured (which Barber claims was a less hectic cleaning area than the Science building or dorms where Barber was assigned), Maria had help in other buildings, and Maria was assigned another employee to assist her.

Barber testified, however, that Delia was the only employee who she believed Columbia College treated better than her. Barber Dep. I 96-97. Even if the claim concerning Maria is properly before the Court, Barber fails to establish a prima facie case of race discrimination because she has not shown that Maria was similarly situated to her. Barber has not offered any evidence regarding Maria's alleged condition, her work-related restrictions, her job responsibilities, or any other specific information regarding Maria's situation. In making a comparison of a plaintiff's treatment to that of employees outside the protected group, a plaintiff must show that the comparables are similarly situated in all relevant respects. See Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Cir. 1992); see also Linear v. Safeway Grocery, 843 F.2d 298 (8th Cir. 1988)(plaintiff must prove that he and non-protected employee were similarly situated in all respects and the other

employee's acts were of comparable seriousness to his own); see also Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494 (4th Cir. Dec. 7, 1998)(unpublished)(employees similarly situated only if they "dealt with the same supervisor, [were] subject to the same standards and...engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (citations omitted)), cert. denied, 527 U.S. 1036 (1999); Smith v. Stratus Computer, Inc., 40 F.3d 11 (1st Cir. 1994)(in disparate treatment cases, employees must be similar in "all relevant aspects" including performance, qualifications, and conduct)(citation omitted), cert. denied, 514 U.S. 1108 (1995); see also Bogren v. Minnesota, 236 F.3d 399, 405 (8th Cir. 2000)(finding that probationary and non-probationary employees are not similarly situated), cert. denied, 534 U.S. 816 (2001).

D.     Harassment

Barber alleges that she was subjected to a racially hostile work environment consisting of punitive work assignments and daily harassment. Columbia College contends that it is entitled to summary judgment on this claim because Barber has proffered no evidence showing, or even inferring, that anyone at Columbia College ever racially harassed her. In her opposition memorandum, Barber contends that she was harassed every day by Hickman, who assigned her more work despite her doctor's restrictions. Plaintiff's Opp. Mem. at 22.

To prevail on a Title VII hostile environment claim based on race, a plaintiff is required to present evidence establishing that "(1) the subject conduct was unwelcome; (2) it was based on the [race] of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710 (4th Cir.1995) (en

banc); see also Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004).

Barber fails to establish a hostile work environment/harassment claim because she has not shown that the alleged actions were based on her race or that they were sufficiently severe or pervasive to alter her conditions of employment and to create an abusive work environment. She has not shown that the alleged actions are based on her race. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 280-282 (4th Cir. 2000); Nichols v. Caroline County Bd. of Educ., 123 F. Supp. 2d 320, 327 (D. Md.)(black plaintiff's assertion that white supervisors subjected him to adverse employment actions "because I am who I am" insufficient;" [t]he court cannot attribute a racial character to the disagreement and misunderstandings between the parties based merely on [plaintiff's] conjectural opinion."); Sharafeldin v. Maryland Dep't of Pub. Safety, 131 F.Supp.2d 730, 741-43 (D.Md. 2001); see also Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)(evidence of workplace disagreements between supervisors and subordinates concerning job duties and performance and of callous and insensitive treatment by supervisors is not sufficient to prove alleged harassment was based on plaintiff's race). Barber has offered no evidence that any of the allegedly harassing conduct was based on her race. She testified that she never heard anyone at Columbia College use a racial slur and did not see any race-based cartoons or jokes. Barber Dep. 101. Clinton, who worked directly with Barber, also testified that she never heard anyone at the College use a racial slur and never heard Barber complain about anyone using a racial slur. Clinton Dep. 50.

E.    Retaliation

Barber alleges that she was terminated in retaliation for making in-house complaints concerning conduct that posed a threat to her personal safety and working conditions and filing a

20

Charge of Discrimination.  Complaint, Paras. 29-34.  Columbia College contends that Barber fails to establish a prima facie case of retaliation and that even if she could establish a prima facie case, it has articulated a legitimate, non-discriminatory reason for her termination that she fails to show is pretextual.

To establish a prima facie case of retaliation under Title VII, an employee must demonstrate that:

1)     the employee engaged in protected activity;[12]

2)     the employer took some adverse employment action against the employee; and

3)     a causal connection existed between the protected activity and the adverse action.

See Haulbrook v. Michelin North America, Inc., 252 F.3d. 696, 706 (4th Cir. 2001)(ADA); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)(ADEA and Title VII); Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994)(Title VII).  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

(1)     Prima Facie Case

Columbia College contends that Barber's only protected conduct that occurred within the applicable statute of limitations was her filing of a Charge on January 31, 2005.  The

---

[12]Under Title VII, a plaintiff need not have filed a formal complaint with the Equal Employment Opportunity Commission or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity.  Warren v. Halstead Indus., Inc., 802 F.2d 746, cert. denied, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C. Cir. 1985).

21

College argues that Barber fails to show that a causal connection existed between the protected activity (filing of Charge) and her termination.

Barber fails to establish a prima facie case of retaliation because she has not established a causal connection between her alleged protected activity (filing of Charge) and her termination. The Fourth Circuit has held that a causal connection, for purposes of demonstrating a prima facie case, exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Generally, however, the passage of time tends to negate this inference. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, (2001) (per curiam) (citing cases); Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998).

Here, Barber fails to establish a causal connection based on proximity alone, as the protected activity (Charge filed January 31, 2005) occurred approximately four months prior to her termination (May 23, 2005). See, e.g., Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229, 232 (4th Cir. 2006)(unpublished)(holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); Garrett v. Lujan, 799 F. Supp. 198, 202 (D.D.C.1992)(concluding that the passage of nearly a year precluded an inference of causal connection); Parrott v. Cheney, 748 F. Supp. 312 (D.Md.1989) (even the passage of as little as five months between filing EEOC complaint and adverse action may be enough to negate causal connection in a particular factual context), aff'd per curiam, 914 F.2d 248 (4th Cir.1990).

Barber, in her opposition memorandum, does not address Columbia College's arguments, but instead claims that she repeatedly complained about how African-Americans workers were treated

and that she was not being accommodated by Hickman. She does not, however, provide the dates that these activities occurred and has not shown that these activities were not time-barred. Further, Barber has not show a causal connection between the allegedly protected activities and her termination.

         (2)     <u>Legitimate, Non-Discriminatory Reason/Pretext</u>

Even if Barber could establish a prima facie case of retaliation, Columbia College has articulated a legitimate, non-discriminatory reason for her termination, that her physician placed permanent restrictions on her that made her unable to perform the essential functions of her job with any reasonable accommodations. Barber, who agrees that she could not perform the essential functions of her job at the time of her termination, fails to show pretext.

<u>CONCLUSION</u>

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (Doc. 25) be granted.

Respectfully submitted,

s/Joseph R. McCrorey

June 28, 2007                 United States Magistrate Judge

Columbia, South Carolina